**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1267-17T4

JEANETTE MCGUINNESS,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, TEACHERS'
PENSION AND ANNUITY FUND,

    Respondent-Respondent.

_____

Argued November 28, 2018 – Decided December 5, 2018

Before Judges Reisner and Mawla.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of Treasury.

Barbara E. Riefberg argued the cause for appellant (Shimberg & Friel, PC, attorneys; Barbara E. Riefberg, on the briefs).

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; John A. Lo Forese, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Jeanette McGuinness appeals from an October 11, 2017 decision by the Board of Trustees for the Teachers' Pension and Annuity Fund (Board), denying her application for accidental disability retirement benefits. We affirm.

The following facts are taken from the record. Petitioner was employed as a mathematics teacher for the Clearview Regional School District. In March 2014, she was injured at an after-school "Pi-Day" volleyball tournament held to raise funds for a scholarship in honor of a former head of the mathematics department, who had been killed in an accident. Specifically, petitioner was struck in the head by a volleyball while resting on the sidelines of the court during the tournament. According to the record, petitioner had helped plan the event and served as a line judge.

In the days following the incident, petitioner felt ill, suffered from double vision and ocular pain, and required medical treatment. In June 2015, petitioner filed for accidental disability retirement benefits. In March 2016, the Board found petitioner totally and permanently disabled as a result of the incident. It granted petitioner ordinary disability retirement benefits, but denied her

accidental disability retirement benefits because "the incident did not occur during and as a result of the performance of her regular or assigned duties."

Petitioner appealed the Board's determination. The determination was upheld following a hearing before an administrative law judge (ALJ). The ALJ found petitioner's volunteering as a line judge was "unrelated to the duties of a math teacher, and teaching generally." The ALJ concluded the role of line judge was wholly voluntary and "had no relationship with petitioner's regular or assigned duties." The Board adopted the ALJ's findings. This appeal followed.

I.

"[We] have 'a limited role' in the review of [agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (quoting Henry, 81 N.J. at 580). The burden of proving an agency action is arbitrary, capricious, or unreasonable is on the challenger. Bueno v. Bd. of Trs. of the

A-1267-17T4

Teachers' Pension & Annuity Fund, 422 N.J. Super. 227, 234 (App. Div. 2011) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).

We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "It is settled that [a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). "[W]e are not bound by the agency's legal opinions." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to de novo review." Ibid. (citing Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

On appeal, petitioner argues the Board's decision was erroneous because the Board's secretary submitted a certification stating the accident occurred during the performance of petitioner's work duties. Petitioner asserts the event

4

was work-related because it was planned on work time, every member of the math department felt they had to attend, the event took place on school grounds after school, and witnesses testified the event was designed to foster unity among the staff and was a part of evaluating teacher contributions to the community. Therefore, petitioner argues the Board erred because it narrowly construed the work-related requirements necessary to qualify for accidental disability retirement benefits.

## II.

According to the Supreme Court, in order

> to obtain accidental disability benefits, [an applicant] must prove:
>
> 1. that he [or she] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

A-1267-17T4

4. that the disability was not the result of the member's willful negligence; [and]

5. that the member is mentally or physically incapacitated from performing his [or her] usual or any other duty.

[Richardson v. Bd. of Trs., 192 N.J. 189, 212-13 (2007).]

N.J.S.A. 18A:66-39(c) echoes Richardson, and permits an award of accidental disability retirement benefits if an applicant is "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his [or her] regular or assigned duties."

The Supreme Court has stated:

assuming all other statutory prerequisites are met, a worker will qualify for an accidental disability pension if he or she is injured on premises owned or controlled by the employer, during or as a result of the actual performance of his or her duties, or in an activity preparatory but essential to the actual duty. That is true whether the injury occurs during the workday or before or after hours.

[Kasper v. Bd. of Trs., 164 N.J. 564, 585 (2000).]

As we noted, the only dispute here pertains to whether petitioner's injury was incurred as a result of her regular or assigned duties. In this regard, the Court in Kasper stated:

the regular workday [constitutes] the period during which the employee is required to be on the employer's

6

premises to perform regularly assigned duties. Regularly assigned duties include activities such as a teacher teaching, a police officer policing, and a firefighter fighting fires. However, the concept is broader. Common sense dictates that the performance of an employee's actual duties incorporates all activities engaged in by the employee in connection with his or her work, on the employer's premises, from the formal beginning to the formal end of the workday.

[Id. at 585-86 (footnotes omitted).]

Furthermore,

an employee may qualify for an accidental disability pension as a result of a traumatic injury occurring prior to the start of or after the end of the formal workday, so long as the employee is at premises owned or controlled by the employer for the purpose of performing his or her regular duties and not for some other purpose.

. . . .

The organizing principle is that one who is at the employer's premises solely to do his or her duty, and who, while doing what he or she is expected to do, is disabled by a traumatic accident, will qualify for inclusion in the class of those injured "during and as a result of the performance of his regular or assigned duties." . . . [T]o qualify for an accidental disability pension an employee who is on premises controlled by the employer and whose injury is causally connected, as a matter of common sense, to the work the employer has commissioned.

[Id. at 587-88.]

Here, the occurrence of the activity during after-school hours would not disqualify petitioner from benefits under <u>Kasper</u>. However, as the ALJ found, the volleyball fundraiser had no relation to petitioner's regular or assigned duties as a mathematics instructor. The activity was not one petitioner's employer expected her to do, and the injury was not causally connected to work commissioned by her employer. We conclude the ALJ's factual findings, as adopted by the Board are supported by substantial credible evidence. Because the Board's decision adopting the ALJ's findings was not arbitrary, capricious, unreasonable, or unsupported by substantial credible evidence in the record, we affirm.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION